UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CHRISTOPHER UNGER and<br>DUSTIN LACH, individuals and<br>on behalf of similarly situated persons,<br><br>    Plaintiff,<br><br>v<br><br>SC ENVIRONMENTAL SERVICES, LLC,<br>a Michigan limited liability company, and<br>JOHN K. SEARS, an individual,<br><br>    Defendants. | Case No: 1:19-cv-00125-JTN-ESC<br><br>Hon. Janet T. Neff<br><br>**Joint Motion for Preliminary Approval of Settlement**<br><br><u>**ORAL ARGUMENT REQUESTED**</u> |

| | |
|---|---|
| Jeffrey S. Theuer (P44161)<br>LOOMIS, EWERT, PARSLEY,<br>  DAVIS & GOTTING, P.C.<br>Attorneys for Plaintiffs<br>124 West Allegan Suite 700<br>Lansing, MI 48933<br>jstheuer@loomislaw.com<br>(517) 482-2400 | Randall B. Kleiman (P35628)<br>Ted W. Stroud (P30196)<br>OADE, STROUD & KLEIMAN, P.C.<br>Attorneys for Defendants<br>200 Woodland Pass, PO 1296<br>East Lansing, MI 48826-1296<br>rkleiman@osklaw.com<br>(517) 351-3550 |

**<u>JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT</u>**

For the reasons stated in the attached Brief in Support, the parties respectfully move this Honorable Court to approve the Settlement Agreement (Ex. 1 to attached brief), Notice (Ex. 2 to attached brief), and enter the proposed Order (Ex. 3 to attached brief) preliminarily approving the settlement in this case.

Respectfully submitted,

| | |
|---|---|
| */s/ Jeffrey S. Theuer* | */s/ Ted W. Stroud* |
| Jeffrey S. Theuer (P44161) | Randall B. Kleiman (P35628) |
| LOOMIS, EWERT, PARSLEY, | Ted W. Stroud (P30196) |
|    DAVID & GOTTING, P.C. | OADE, STROUD & KLEIMAN, P.C. |
| Attorneys for Plaintiffs | Attorneys for Defendants |
| 124 West Allegan Suite 700 | 200 Woodland Pass, PO 1296 |
| Lansing, MI 48933 | East Lansing, MI 48826-1296 |
| (517) 482-2400 | (517) 351-3550 |
| | |
| Dated: December 16, 2019 | Dated: December 16, 2019 |

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CHRISTOPHER UNGER and<br>DUSTIN LACH, individuals and<br>on behalf of similarly situated persons,<br><br>    Plaintiff,<br><br>v<br><br>SC ENVIRONMENTAL SERVICES, LLC,<br>a Michigan limited liability company, and<br>JOHN K. SEARS, an individual,<br><br>    Defendants. | Case No: 1:19-cv-00125-JTN-ESC<br><br>Hon. Janet T. Neff<br><br>**Brief in Support of<br>Joint Motion for Preliminary Approval<br>of Settlement**<br><br>**ORAL ARGUMENT REQUESTED** |

| | |
|---|---|
| Jeffrey S. Theuer (P44161)<br>LOOMIS, EWERT, PARSLEY,<br>  DAVIS & GOTTING, P.C.<br>Attorneys for Plaintiffs<br>124 West Allegan Suite 700<br>Lansing, MI 48933<br>jstheuer@loomislaw.com<br>(517) 482-2400 | Randall B. Kleiman (P35628)<br>Ted W. Stroud (P30196)<br>OADE, STROUD & KLEIMAN, P.C.<br>Attorneys for Defendants<br>200 Woodland Pass, PO 1296<br>East Lansing, MI 48826-1296<br>rkleiman@osklaw.com<br>(517) 351-3550 |

**BRIEF IN SUPPORT OF
JOINT MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT**

    Plaintiffs Christopher Unger and Dustin Lach ("Named Plaintiffs") and Defendants SC Environmental Services, LLC ("SCES"), SC Services, LLC ("SCS"),[1] and John K. Sears

---

[1] SCS is wholly owned by Defendant Sears, and routinely shares employees with Defendant SCES. Pursuant to the terms of the proposed Settlement Agreement, Class Counsel has filed, or soon will file, a motion to amend the Complaint to assert claims against SCS as an "employer" under 29 U.S.C. §203(d) and MCL 408.412(d). Defendants do not oppose that motion.

1

("Sears") (collectively "Defendants") respectfully move this Court to approve the proposed Class Action and Collective Action Settlement Agreement ("Settlement Agreement") reached by the parties and attached as Exhibit 1. This lawsuit asserts wage and hour claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C §201, *et seq*; and the Michigan Workforce Opportunity Wage Act ("WOWA"), MCL 408.411, *et seq.*, on behalf of employees and former employees of Defendants.

The parties submit that the proposed Settlement Agreement is fair and reasonable, and satisfies the criteria for approval under the FLSA, 29 U.S.C. § 216(b). The settlement was achieved through a lengthy process of calculation and negotiation, further described in this Motion. If approved, the Settlement Agreement will result in full payment of wages and 100% liquidated damages to the eligible employees and former employees who participate in the settlement, and a mechanism to resolve claims of participating Class members who assert that the proposed settlement does not result in them being paid all wages and liquidated damages due them.

The proposed Settlement Agreement achieves all parties' objectives. It ensures that eligible employees and former employees will be paid their full back wages and full liquidated damages promptly, while preserving the right of all participating Class members to challenge the accuracy of the calculation of unpaid wages and overtime due through a streamlined mediation process or, if they choose, to elect not to participate in this class settlement at all. It also ensures finality for Defendants, while making the settlement as inclusive as possible. To accomplish these objectives, the parties submit the proposed Settlement Agreement (Ex. 1), proposed Notice to Class Members of Pendency of Class Action, Proposed Settlement, and Fairness Hearing (Ex. 2), and proposed Order Preliminarily Approving Settlement and Regarding Notice (Ex. 3). The

following sections explain the nature of the lawsuit, the extensive negotiations that resulted in settlement, the principal terms of the proposed settlement, including distribution of settlement proceeds, and the grounds for approving the Settlement Agreement as fair and reasonable to all parties, and the proposed Class.

## I.    The Lawsuit and Settlement Negotiations

Plaintiffs Unger and Lach filed this action against Defendants alleging a class and collective action under the FLSA and WOWA on February 18, 2019. Defendants SCES and SCS are construction demolition and remediation companies based in Lansing, Michigan, and have operated throughout portions of Michigan. SCES and SCS are joint employers that routinely share employees and are engaged in a common business purpose within the meaning of the FLSA, 29 U.S.C. § 203(r)(1). Defendant John Sears is the sole owner of both SCES and SCS. Defendants continue to operate.  During the time period in dispute in this action SCE and SCES routinely performed work on "prevailing wage" projects for public entity owners where the pay rate and overtime rate for each job classification is governed by a "wage decision" issued for each such project.  The "wage decision" describes multiple job classifications and sets forth the wage rate and the overtime rate that applies to each job classification.  An example of a typical "wage decision" is provided here as Exhibit 4.  This "wage decision" is for a project with the Genesee County Land Bank Authority.  Although SCE and SCES also performed non "prevailing wage" work in the time period at issue in this action, much of Defendants' work in this time period was "prevailing wage" work controlled by "wage decisions" that establish the wage and overtime rates that apply to each job classification.

The Representative Plaintiffs are Christopher Unger and Dustin Lach, who were employed by SCES as truck drivers. In addition to Lach and Unger, there are 92 other current and former

3

employees in the proposed Class. Unger and Lach are the only current opt-in plaintiffs in the collective action portion of the case because settlement discussions began before Plaintiffs moved for certification of the collective action.

The lawsuit claims that Defendants' had a policy of not paying hours worked over forty (40) hours per week at the overtime rate, and failing to compensate employees at appropriate wage rates, or for all time worked. Plaintiffs alleged that Defendants paid overtime hours at the regular time pay rate, in cash, and without making any withholding.  Plaintiffs will be moving for leave to file a First Amended Complaint to allege additional claims for unpaid hours and payment of wages at disputed wage rates by SCES and SCS.  Defendants will not oppose this motion. The Complaint also sought certification of a Class pursuant to Fed. R. Civ. P. 23, and a Collective Action pursuant to FLSA, 29 U.S.C. § 216(b).

Defendants assert, and Plaintiffs acknowledge, that should the case proceed, many *bona fide* disputes over legal and factual issues will have to be litigated, and the ultimate outcome will impact the timing of payments to some Class members with uncontested claims, and the amount of such claims for other current and former employees whose claims are disputed. These disputes include the following:

1. Whether the individual Defendant can be held personally liable under the FLSA in the circumstance presented;
2. Whether the actions of Defendants were taken in good faith;
3. Whether the Court should exercise supplemental jurisdiction of the state law claims pleaded;

4

4. Whether employees performed duties and activities appropriate to their wage classification as governed by the wage decision applicable to each prevailing wage project.

Settlement negotiations began shortly after the Complaint was filed and spanned over seven months. In May 2019 Defendants hired CPA firm Rehman Robson, LLC, to examine its payroll records (and other related records) to calculate the proper amount of wages and overtime due defendants, employees and former employees for the period December 27, 2015 through March 23, 2019. As Rehman Robson was doing its work, the parties conferred on numerous occasions regarding the calculation methodology and tax treatment for unpaid wages and overtime. Plaintiffs requested, and were provided, employee lists, including contact information, raw payroll data and payroll records for all employees and former employees who worked for defendants in the three-year period between December 27, 2015 through March 23, 2019.

On July 15, 2019, Rehman Robson produced their draft report using the guidelines agreed through negotiations. Defendants also produced electronic timecard and payroll data for the years 2016-19 amounting to in excess of 1,312 MB of materials, and certain documentation from the State of Michigan related to Prevailing Wage requirements for projects on which Defendants worked. Plaintiffs requested and received certified payroll documents from the Genesee County Land Bank Authority, and interviewed multiple Class members, some with personal documentation concerning their hours and pay. Class Counsel, with substantial assistance from the Named Plaintiffs, reviewed the documentation provided by Defendants, and verified the hours, rates of pay, and other payroll information against information obtained from these third-party sources.

Class Counsel met with Counsel for Defendants, the President of SCE and Rehman Robson staff to review the Rehman Robson report, and discuss various issues and questions arising from Plaintiffs' review of the documentation. As a result of that meeting, Defendants produced a revised wage report September 13, 2019 which increased the total amount to be paid to the Settlement Class.

Class counsel once again reviewed and verified the revised report with substantial assistance from the Named Plaintiffs. The parties' counsel, President of SCE and staff from Rehman Robson met again to further negotiate various aspects of the revised report. A second revised report was issued November 4, 2019, which again resulted in an increase in the total settlement payment. The parties then negotiated the terms of a formal settlement agreement, which was reduced to writing and executed by Defendants and the Named Plaintiffs on November 15, 2019.

## II.     The Terms of the Settlement Agreement

The proposed settlement provides for a net 100% payment of unpaid wages and overtime to all Class member employees and former employees that should have received overtime in all pay periods from January 6, 2016 through February 27, 2019, (these pay periods cover work between December 27, 2015 and March 23, 2019).  By March 27, 2019 Defendants had changed their overtime payment policy to comply with the FLSA. This enlarges the Class Period by starting the relevant overtime calculations on December 27, 2015 rather than February 18, 2016, which is the beginning of the three-year limitations period under the FLSA. The reason for the enlargement of the Class Period is convenience to the Defendants as they correct their payroll records on a calendar year basis. The enlargement benefits the proposed Class by resulting in overtime payments over a larger time period.

The detailed wage calculations for the Class, by employee, are attached to the Settlement Agreement as Exhibit A. Class counsel, with assistance of the Named Plaintiffs, reviewed the identification of employees, reported hours, and calculations in detail, checking the numbers against records received from other sources, including the Named Plaintiffs' own electronic hour records, certified payroll records from the Genesee County Land Bank Authority, and interviews with numerous Class member employees, and reviews of their personal records where available. The total amount to be paid to the proposed Class under the Settlement Agreement is $517,983.18. That amount includes 100% of unpaid overtime wages and 100% liquidated damages in the amounts reflected in Exhibit A to the Settlement Agreement.

The Settlement Agreement provides for a representative plaintiff fee to be paid to Named Plaintiffs Unger and Lach of $13,000 each. This payment is over and above the payment to the settlement Class and will not result in any diminution of payments to the Class employees.

The Settlement Agreement provides for payment of attorney fees and costs to Class Counsel as authorized under the FLSA, 29 U.S.C. § 216(b), in the amount of $61,411.50 in fees and $467.50 in costs through October 25, 2019. Class Counsel provided its billings records for matters directly related to this case to Counsel for Defendants. The parties agree the requested fees and costs through October 25, 2019 are fair and reasonable. Defendants agree in the Settlement Agreement not to object to Class Counsel's request for reimbursement of total attorney fees and costs of up to $65,000.00 through Final Approval. Class Counsel represents that actual fees (inclusive of time after October 25, 2019) currently exceed $65,000.00, but Class Counsel will limit its request to $65,000 if this proposed settlement is approved. The payment of attorney fees is over and above the payment to the settlement Class and will not result in diminution of payments to the Class employees.

7

In order to properly account for taxes, Defendants will withhold local, state, and Federal payroll taxes from the 50% of each employee's settlement payment allocated as unpaid wages. No withholding will be made from the liquidated damages portion of the settlement payment. A deduction will also be made from settlement payments to account for the previous overtime payments made by Defendants at the straight time rate in cash, from which no withholding was previously taken. Class Members receiving payments, and who have not elected to be excluded, will receive an IRS Form W-2 for the wage portion of the settlement payment, and an amended W-2 reflecting the withholding related to the cash payments.  Settlement Class members shall be issued IRS form(s) 1099 for the fifty percent (50%) of each Settlement Class member's Settlement Payment allocated as penalties or other nonwage recovery.

The parties propose a three-step process leading to final approval of the Settlement Agreement, which the parties believe to be fair and reasonable to all employees and the parties. The first step is preliminary approval of the Settlement Agreement. If this motion requesting preliminary approval is granted, the parties propose that Class Counsel mail the Class Notice attached as Exhibit C to the Settlement Agreement to all Class Members within 14 days. In step two, within 30 days, employees may elect to be excluded from the settlement, file objections to the settlement, or request mediation. Class Members that make no election automatically participate in the settlement. Step three is the final fairness hearing, at which the parties will move for final approval of the settlement, and any objections will be heard. If final approval is granted, payment of all amounts due under the Settlement Agreement will be made within 30 days.

During review of the reports prepared by Rehman Robson, the CPA firm hired by defendants to examine their payroll records, Class Counsel became aware that a small group of employees who worked on prevailing wage projects dispute the pay rate applied to a portion of

8

their hours. Class Counsel estimates this is less than 10% of the Class. During negotiations, the parties were unable to resolve this dispute, largely because it involves a factual determination of the specific activities each employee was performing on particular workdays. In order to account for this dispute, and not unnecessarily delay payments agreed as due to the other more than 90% of the Class, the parties negotiated a mediation process which may be elected by these employees without delaying the remainder of the settlement.

A Class Member wishing to do so would elect mediation within 30 days after the Notices are mailed. Mediating employees would not be paid the amounts due in Exhibit A until their mediation is completed, subject to adjustment up or down depending on the results of the process. Mediation would take place within 60 days after the election deadline, before a mediator chosen by the parties from a list of approved mediators by the United States District Court for the Western District of Michigan. Mediation fees and expenses and employee counsel fees and expenses will be paid by Defendants, unless the final judgment after mediation or otherwise is less than or equal to the amount of the proposed payment to that employee in Exhibit A, in which case, the mediation fees and costs will be shared equally, and the employee will be responsible for his or her own attorney's fees and expenses. None of the costs of the mediation process will diminish or delay the settlement payments to other Class Members under the Settlement Agreement. This process allows the employees to elect to participate in the settlement payments stated in Exhibit A or assert a right to greater recovery through mediation. If no agreement is reached through mediation, the proposed settlement provides for all the unresolved mediation claims to be consolidated into a single evidentiary hearing for entry of final judgment by the Court.

### III.     The Settlement Agreement Should Be Approved

The Settlement Agreement is subject to, and conditioned upon, this Court's approval pursuant to Section 216(b) of the FLSA, 29 U.S.C. §216(b). The parties request approval under the standards discussed below.

**A. The Seven-Factor Standard Is Satisfied.**

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA §16(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc*., 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (Ex. 5) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court within the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (Ex. 6). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1)     The risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)), *quoted in Crawford*, 2008 WL 4724499 at *3.

Here, the seven-factor standard supports approval of the Settlement Agreement. Class Counsel has extensive experience litigating employment and FLSA claims, and the issues were hotly contested; there is no fraud or collusion. The complexity, expense and likely duration of continued litigation favor approval, in that wage-and-hour cases for groups of employees are always expensive and time-consuming, and the present cases have the added complexity of adjudicating alleged "employer" liability on the part of individuals. While limited formal discovery has been exchanged, the parties have engaged in substantial investigation prior to and during the negotiations, and the issues are well understood. The outcome is uncertain for the Plaintiffs, and the risks of continued litigation are evident for both sides. The opinions of experienced counsel on both sides support the Settlement Agreement, as do the Representative Plaintiffs. Finally, the Settlement, as the only likely vehicle for providing relief to the Defendants' employees and is distinctly in the interest of absent employees as well as in the public interest.

### B.  The Settlement Distributions Are Fair, Reasonable and Adequate

As part of the scrutiny it applies to an FLSA class or collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v Fibreboard Corp.*, 527 U.S. 815, 855 (1999). In the present case, the Settlement Agreement provides for individual payments to participating Class members in the total amount of their respective unpaid wages for work performed and 100% liquidated damages from December 27, 2015 through March 23, 2019. There is no diminution in these payments for representative plaintiff fees, or attorney fees and expenses. The parties assert this settlement is fair, reasonable and adequate.

### C. The Representative Plaintiffs' Fees are Proper and Reasonable

Service fees to representative plaintiffs recognizing the value of their services on behalf of other participants are proper. *In re Dun & Bradstreet Credit Services Customer Litigation,* 130 F.R.D. 366, 373 (S.D. Ohio 1990). In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility,* 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

Here, the proposed Representative Plaintiff fees are proper and reasonable. Representative Plaintiffs Christopher Unger and Dustin Lach have provided extensive and effective assistance to Class Counsel throughout the course of this matter. They reviewed payroll records with counsel, facilitated interviews with other employees, and were instrumental in assisting Class Counsel in obtaining payroll records from the Genesee County Land Bank Authority, which were an important means of verifying proper settlement payment amounts and employee identification. The proposed Representative Plaintiff fees were well-earned, and do not reduce or discount the payments to the Class.

### D. Class Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. §216(b).

In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and

hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)).

*Fegley* was followed in *Bessey v. Packerland Plainwell, Inc*. 2007 WL 3173972 (W.D. Mich. 2007) (Ex. 7), in which the district court approved a one-third attorneys' fee in an FLSA settlement very much like the one presented here. Fulfilling *Fegley's* emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel" because "it rewards counsel for taking on a case which might not otherwise be economically feasible." *Bessy*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved"). *Accord, In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993).

The *Bessey* court considered the comparative data concerning Rule 23 class settlements summarized in *Shaw v. Toshiba American Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study"). <u>This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement</u>.

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Ex. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average fee to class counsel was approximately 33%, while the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement and related attorney fee and cost request in the present case are exemplary. The payments to participants represent approximately 100% of their recoverable wages under the FLSA, plus 100% liquidated damages. Further, the attorney fees are in addition to the amounts paid to the Class and do not result in any diminution of damages payable. The attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiffs and the Class.

Class Counsel's requested fees and costs are based on actual hours spent on matters directly related to the litigation and investigation of class claims. The total fee as stated in the Settlement Agreement amounts to approximately 12% of the principal settlement amount, well below the one-third contingency amount awarded in some cases and is not objected to by Defendants. The attorneys' fees requested by Class Counsel should not be further reduced because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing their potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121. The litigation expenses sought to be reimbursed are proper and reasonable. All such expenses were incurred in the course of this action for the purpose of preserving, proving, and presenting the claims of the Representative Plaintiffs and other, similarly situated employees. Proposed Class Counsel will file a motion to approve their requested attorney fees in connection with the final fairness hearing in this case.

### IV. Conclusion

For the foregoing reasons, the parties respectfully request that this Court approve the Settlement Agreement (Ex. 1), Notice (Ex. 2), and enter the Order (Ex. 3) preliminarily approving the settlement.

Respectfully submitted,

| | |
|---|---|
| */s/ Jeffrey S. Theuer* | */s/ Ted W. Stroud* |
| Jeffrey S. Theuer (P44161) | Randall B. Kleiman (P35628) |
| LOOMIS, EWERT, PARSLEY, | Ted W. Stroud (P30196) |
|    DAVID & GOTTING, P.C. | OADE, STROUD & KLEIMAN, P.C. |
| Attorneys for Plaintiffs | Attorneys for Defendants |
| 124 West Allegan Suite 700 | 200 Woodland Pass, PO 1296 |
| Lansing, MI 48933 | East Lansing, MI 48826-1296 |
| (517) 482-2400 | (517) 351-3550 |
| Dated: December 16, 2019 | Dated: December 16, 2019 |

### CERTIFICATE OF COMPLIANCE

In accordance with LCivR 7.3(b)(i), the undersigned certifies that the word count on this Brief in Support is 4,080, as calculated by Microsoft Word for Office 365.

/s/*Jeffrey S. Theuer*
Jeffrey S. Theuer
Counsel for Plaintiffs

## CERTIFICATE OF SERVICE

I, herby certify that on December 16, 2019, I electronically filed the foregoing Joint Motion for Preliminary Approval of Settlement with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

Dated: December 16, 2019

/s/ *Jeffrey S. Theuer*
Jeffrey S. Theuer (P44161)
Loomis, Ewert, Parsley,
 Davis & Gotting, P.C.
124 W. Allegan St., Suite 700
Lansing, MI  48933
(517) 482-2400
jstheuer@loomislaw.com

Attorneys for Plaintiffs