UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| CHRISTOPHER UNGER and<br>DUSTIN LACH, individuals and<br>on behalf of similarly situated persons,<br><br>    Plaintiff,<br><br>v<br><br>SC ENVIRONMENTAL SERVICES, LLC,<br>a Michigan limited liability company, SC<br>SERVICES, LLC, a Michigan limited liability<br>company, and JOHN K. SEARS, an individual,<br><br>    Defendants. | Case No: 1:19-cv-00125-JTN-ESC<br><br>Hon. Janet T. Neff<br><br><br><br>**ORAL ARGUMENT REQUESTED** |

| | |
|---|---|
| Jeffrey S. Theuer (P44161)<br>LOOMIS, EWERT, PARSLEY,<br>  DAVIS & GOTTING, P.C.<br>Attorneys for Plaintiffs<br>124 West Allegan Suite 700<br>Lansing, MI 48933<br>jstheuer@loomislaw.com<br>(517) 482-2400 | Randall B. Kleiman (P35628)<br>Ted W. Stroud (P30196)<br>OADE, STROUD & KLEIMAN, P.C.<br>Attorneys for Defendants<br>200 Woodland Pass, PO 1296<br>East Lansing, MI 48826-1296<br>rkleiman@osklaw.com<br>(517) 351-3550 |

**UNOPPOSED MOTION FOR FINAL APPROVAL OF SETTLEMENT**

For the reasons stated in the attached Brief in Support, Plaintiffs respectfully move this Honorable Court for final approval of the Class Action and Collective Action Settlement Agreement (Ex. 1 to attached Brief), and entry of the proposed Order (Ex. 2 to attached Brief) finally approving the settlement in this case, and authorizing the indicated distributions to Class members, payment of Representative Plaintiff fees, and payment of attorney fees and costs.

No objections to the settlement have been filed, and Class Counsel has received no requests for exclusion or for mediation under the terms of the settlement. Pursuant to the Court's Order Preliminarily Approving Settlement and Regarding Notice, dated December 27, 2019 (ECF No. 29), "[a]ny Settlement Class Member who does not make an objection in the manner provided herein shall be deemed to have waived such objection and shall be foreclosed from making any objection to the fairness, adequacy, or reasonableness of the proposed settlement, or the application for attorneys' fees, costs, and expenses to Class Counsel." This Motion is unopposed. *See* Certification Pursuant to Local Rule 7.1(d) (Ex. 9 to attached Brief).

        Respectfully submitted,

*/s/ Jeffrey S. Theuer*
Jeffrey S. Theuer (P44161)
LOOMIS, EWERT, PARSLEY,
   DAVID & GOTTING, P.C.
Attorneys for Plaintiffs/Class
124 West Allegan Suite 700
Lansing, MI 48933
 (517) 482-2400

Dated:  April 6, 2020

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

---

| | |
|---|---|
| CHRISTOPHER UNGER and<br>DUSTIN LACH, individuals and<br>on behalf of similarly situated persons, | Case No: 1:19-cv-00125-JTN-ESC<br><br>Hon. Janet T. Neff |
|     Plaintiff, | **Brief in Support of Unopposed**<br>**Motion for Final Approval of Settlement** |
| v | <u>**ORAL ARGUMENT REQUESTED**</u> |
| SC ENVIRONMENTAL SERVICES, LLC,<br>a Michigan limited liability company, SC<br>SERVICES, LLC, a Michigan limited liability<br>company, and JOHN K. SEARS, an individual, | |
|     Defendants. | |

---

| | |
|---|---|
| Jeffrey S. Theuer (P44161)<br>LOOMIS, EWERT, PARSLEY,<br>  DAVIS & GOTTING, P.C.<br>Attorneys for Plaintiffs<br>124 West Allegan Suite 700<br>Lansing, MI 48933<br>jstheuer@loomislaw.com<br>(517) 482-2400 | Randall B. Kleiman (P35628)<br>Ted W. Stroud (P30196)<br>OADE, STROUD & KLEIMAN, P.C.<br>Attorneys for Defendants<br>200 Woodland Pass, PO 1296<br>East Lansing, MI 48826-1296<br>rkleiman@osklaw.com<br>(517) 351-3550 |

---

<u>**BRIEF IN SUPPORT OF UNOPPOSED**</u>
<u>**MOTION FOR FINAL APPROVAL OF SETTLEMENT**</u>

    Plaintiffs Christopher Unger and Dustin Lach ("Named Plaintiffs") respectfully move this Court to grant final approval of the proposed Class Action and Collective Action Settlement Agreement ("Settlement Agreement") reached by the parties and attached as Exhibit 1. Preliminary approval was granted by Order of this Court dated December 27, 2019 (ECF No. 29), and a Fairness Hearing was scheduled for April 17, 2020.

3

This lawsuit asserts wage and hour claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C §201, *et seq*; and the Michigan Workforce Opportunity Wage Act ("WOWA"), MCL 408.411, *et seq*., on behalf of employees and former employees of Defendants.

Class counsel submits that the proposed Settlement Agreement is fair, reasonable, and adequate, and satisfies the criteria for approval under the FLSA, 29 U.S.C. § 216(b). The settlement was achieved through a lengthy process of calculation and negotiation, further described in this Brief. If finally approved, the Settlement Agreement will result in full payment of wages and 100% liquidated damages to the eligible employees and former employees who participate in the settlement, based on the payroll records. The Settlement Agreement also provided an alternate dispute resolution mechanism for any Class members who wanted to participate in the settlement, but believed the calculation of their settlement amount was inaccurate. No Class member elected the alternate dispute process.

The proposed Settlement Agreement achieves all parties' objectives. It ensures that eligible employees and former employees will be paid their full back wages and full liquidated damages promptly, and preserves the right of Class members to elect not to participate in this class settlement at all. No Class member filed an objection to the settlement, and no one elected to be excluded from the settlement. It also ensures finality for Defendants, while making the settlement as inclusive as possible. The Court preliminarily approved the settlement by Order, dated December 27, 2019 (ECF No. 29). The following sections explain the nature of the lawsuit, the extensive negotiations that resulted in settlement, the principal terms of the proposed settlement, including distribution of settlement proceeds, and the grounds for approving the Settlement Agreement as fair, reasonable, and adequate to all parties, and in the best interests the Class.

## I.      The Lawsuit and Settlement Negotiations

Plaintiffs Unger and Lach filed this action against Defendants alleging a class and collective action under the FLSA and WOWA on February 18, 2019. Defendants SCES and SCS are construction demolition and remediation companies based in Lansing, Michigan, and have operated throughout portions of Michigan. SCES and SCS are joint employers that routinely share employees and are engaged in a common business purpose within the meaning of the FLSA, 29 U.S.C. § 203(r)(1). Defendant John Sears is the sole owner of both SCES and SCS. Defendants continue to operate.  During the time period in dispute in this action SCE and SCES routinely performed work on "prevailing wage" projects for public entity owners where the pay rate and overtime rate for each job classification were governed by a "wage decision" issued for each such project.  These "wage decisions" described multiple job classifications and set forth the wage rate and the overtime rate that applied to each job classification.  An example of a typical "wage decision" is provided here as Exhibit 3.  This example of a "wage decision" is for a project with the Genesee County Land Bank Authority.  The "wage decision" documents allow a means to verify the proper wage and overtime rates for the Class.  Although SCE and SCES also performed non "prevailing wage" work in the time period at issue in this action, much of Defendants' work in this time period was "prevailing wage" work.

The Representative Plaintiffs are Christopher Unger and Dustin Lach, who were employed by SCES as truck drivers. In addition to Lach and Unger, there are 91 other current and former employees in the proposed Class, for a total of 93 Class members. Unger and Lach are the only opt-in plaintiffs in the collective action portion of the case because settlement discussions began before Plaintiffs moved for certification of the collective action.

The lawsuit claims that Defendants had a policy of failing to pay for hours worked over forty (40) hours per week at the overtime rate, and failing to compensate employees at appropriate wage rates, or for all time worked. Plaintiffs also alleged that Defendants paid overtime hours at the regular time pay rate, in cash, and without making any withholding. The Complaint sought certification of a Class pursuant to Fed. R. Civ. P. 23, and a Collective Action pursuant to FLSA, 29 U.S.C. § 216(b). On December 30, 2019, the Court certified the following Class pursuant to Fed. R. Civ. P. 23:

> Employees of Defendants in the State of Michigan who were compensated on an hourly basis at any time within the three years immediately preceding the filing of the Collective and Class Action Complaint.

Order, dated December 30, 2019 (ECF No. 32). Class Counsel and Class Representatives were designated in that same Order. *Id.*

Plaintiffs moved for leave to file a First Amended Complaint to allege additional claims for unpaid hours and payment of wages at disputed wage rates by SCES and SCS, which was granted by Order, dated January 10, 2020 (ECF No. 36).

Defendants and Plaintiffs acknowledge that should the case proceed, many *bona fide* disputes over legal and factual issues will have to be litigated, and the ultimate outcome will impact the timing of payments to some Class members with uncontested claims, and the amount of such claims for other current and former employees whose claims are disputed. These disputes include the following:

1. Whether the individual Defendant can be held personally liable under the FLSA in the circumstance presented;

2. Whether the actions of Defendants were taken in good faith;

3. Whether the Court should exercise supplemental jurisdiction of the state law claims pleaded;

4. Whether employees performed duties and activities appropriate to their wage classification as governed by the wage decision applicable to each prevailing wage project.

Settlement negotiations began shortly after the Complaint was filed and spanned over seven months. In May 2019 Defendants hired CPA firm Rehman Robson, LLC, to examine its payroll records (and other related records) to calculate the proper amount of wages and overtime due defendants, employees and former employees for the period December 27, 2015 through March 23, 2019. As Rehman Robson was doing its work, the parties conferred on numerous occasions regarding the calculation methodology and tax treatment for unpaid wages and overtime. Plaintiffs requested, and were provided, employee lists, including contact information, raw payroll data and payroll records for all employees and former employees who worked for defendants in the three-year period between December 27, 2015 through March 23, 2019.

On July 15, 2019, Rehman Robson produced their draft report using the guidelines agreed through negotiations. Defendants also produced electronic timecard and payroll data for the years 2016-19 amounting to in excess of 1,312 MB of materials, and certain documentation from the State of Michigan related to Prevailing Wage requirements for projects on which Defendants worked. Plaintiffs requested and received certified payroll documents from the Genesee County Land Bank Authority, and interviewed multiple Class members, some with personal documentation concerning their hours and pay. Class Counsel, with substantial assistance from the Named Plaintiffs, reviewed the documentation provided by Defendants, and verified the hours,

rates of pay, and other payroll information against information obtained from these third-party sources.

Class Counsel met with Counsel for Defendants, the President of SCE and Rehman Robson staff to review the Rehman Robson report, and discuss various issues and questions arising from Plaintiffs' review of the documentation. As a result of that meeting, Defendants produced a revised wage report September 13, 2019 which increased the total amount to be paid to the Settlement Class.

Class counsel once again reviewed and verified the revised report with substantial assistance from the Named Plaintiffs. The parties' counsel, President of SCE and staff from Rehman Robson met again to further negotiate various aspects of the revised report. A second revised report was issued November 4, 2019, which again resulted in an increase in the total settlement payment. The parties then negotiated the terms of a formal settlement agreement, which was reduced to writing and executed by Defendants and the Named Plaintiffs on November 15, 2019.

## II.    The Terms of the Settlement Agreement

If approved by the Court, the settlement will provide a net 100% payment of unpaid wages and overtime to all Class member employees and former employees that should have received overtime in all pay periods from January 6, 2016 through February 27, 2019 (these pay periods cover work between December 27, 2015 and March 23, 2019).  By March 27, 2019 Defendants had changed their overtime payment policy to comply with the FLSA. This enlarges the Class Period by starting the relevant overtime calculations on December 27, 2015 rather than February 18, 2016, which is the beginning of the three-year limitations period under the FLSA. The reason for the enlargement of the Class Period is convenience to the Defendants as they correct their

payroll records on a calendar year basis. The enlargement benefits the proposed Class by resulting in overtime payments over a larger time period.

The detailed wage calculations for the Class, by employee, are attached to the Settlement Agreement as Exhibit A. Class counsel, with assistance of the Named Plaintiffs, reviewed the identification of employees, reported hours, and calculations in detail, checking the numbers against records received from other sources, including the Named Plaintiffs' own electronic hour records, certified payroll records from the Genesee County Land Bank Authority, and interviews with numerous Class member employees, and reviews of their personal records where available. The total amount to be paid to the proposed Class under the Settlement Agreement is $517,983.18. That amount includes 100% of unpaid overtime wages and 100% liquidated damages in the amounts reflected in Exhibit A to the Settlement Agreement.

The Settlement Agreement provides for a representative plaintiff fee to be paid to Named Plaintiffs Unger and Lach of $13,000 each. This payment is over and above the payment to the settlement Class and will not result in any diminution of payments to the Class employees.

The Settlement Agreement provides for payment of attorney fees and costs to Class Counsel as authorized under the FLSA, 29 U.S.C. § 216(b), in the total amount of up to $65,000.00. Class Counsel provided its billings records for matters directly related to this case to Counsel for Defendants. The parties agree the requested fees and costs are fair and reasonable. Defendants agreed in the Settlement Agreement not to object to Class Counsel's request for reimbursement of total attorney fees and costs of up to $65,000.00 through Final Approval. Class Counsel represents that their actual fees significantly exceed $65,000.00, but Class Counsel will limit its request to $65,000 if this settlement is finally approved. Class counsel's billing statement is attached as Exhibit 4, and reflects actual attorney fees of $98,640.00, and costs of $516.05.

Class Counsel therefore requests an award of $64,483.95 in fees and $516.05 in costs for a total of $65,000.00. The payment of attorney fees is over and above the payment to the settlement Class and will not result in diminution of payments to the Class.

In order to properly account for taxes, Defendants will withhold local, state, and Federal payroll taxes from the 50% of each employee's settlement payment allocated as unpaid wages. No withholding will be made from the liquidated damages portion of the settlement payment. A deduction will also be made from settlement payments to account for tax due on the previous overtime payments made by Defendants at the straight time rate in cash, from which no withholding was previously taken. Class Members receiving payments will receive an IRS Form W-2 for the wage portion of the settlement payment, and an amended W-2 reflecting the withholding related to the cash payments.  Settlement Class members will be issued IRS form(s) 1099 for the fifty percent (50%) of each Settlement Class member's Settlement Payment allocated as liquidated damages or other nonwage recovery.

The process leading to this motion for final approval of the Settlement Agreement was fair and reasonable to all employees and the parties. The first step was preliminary approval of the Settlement Agreement. Preliminary approval was granted by Order of this Court, dated December 27, 2019. ECF No. 29. "Preliminary approval gives rise to a presumption that the settlement is fair, reasonable and adequate. Objectors, therefore, have the burden of persuading this Court that the proposed settlement is unreasonable." *Fussell v. Wilkinson,* 2005 WL 3132321, *3 (S.D. Ohio Nov. 22, 2005) (citations omitted). Ex. 5. *See also In re Cincinnati Policing,* 209 F.R.D. 395 (S.D. Ohio. 2002)(*quoting Williams v. Vukovich,* 720 F.2d 909, 921 (6th Cir. 1983)).

Pursuant to the Preliminary Approval Order, Class Counsel mailed the Class Notice attached as Exhibit C to the Settlement Agreement to all Class Members within 14 days.

Employees could elect to be excluded from the settlement, file objections to the settlement, or request mediation. Class Members that made no election automatically participate in the settlement. No objections to the Settlement were filed, and no elections to be excluded, or requests for mediation, were received by Class Counsel. The last step is the final fairness hearing, at which the parties move for final approval of the settlement. If final approval is granted, payment of all amounts due under the Settlement Agreement will be made within 30 days.

### III. The Settlement Agreement Should Be Finally Approved

The Settlement Agreement is subject to, and conditioned upon, this Court's final approval pursuant to Section 216(b) of the FLSA, 29 U.S.C. §216(b). Plaintiffs request final approval under the standards discussed below. This request is unopposed by Defendants.

**A. The Seven-Factor Standard Is Satisfied.**

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA §16(b) "after scrutinizing the settlement for fairness." *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (Ex. 6) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (*citing Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946))).

As a district court within the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'" *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008) (Ex. 7). The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

11

> (1)    The risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.,* 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1205 (6th Cir. 1992); *Williams v Vukovich*, 720 F.2d 909, 922-23 (6th Cir. 1983)), *quoted in Crawford*, 2008 WL 4724499 at *3.

Here, the seven-factor standard supports final approval of the Settlement. Class Counsel has extensive experience litigating employment and FLSA claims, and the issues were hotly contested; there was no fraud or collusion, and none was alleged. The complexity, expense and likely duration of continued litigation favor approval, in that wage-and-hour cases for groups of employees are always expensive and time-consuming, and the present case has the added complexity of adjudicating alleged "employer" liability on the part of individuals. While limited formal discovery has been exchanged, the parties have engaged in substantial investigation and document production prior to and during the negotiations, and the issues are well understood. The outcome is uncertain for the Plaintiffs, and the risks of continued litigation are evident for both sides. The opinions of experienced counsel on both sides support the Settlement Agreement, as do the Representative Plaintiffs. Finally, the Settlement is the only likely vehicle for providing relief to the Defendants' employees and is distinctly in the interest of absent employees as well as in the public interest.

### B.  The Settlement Distributions Are Fair, Reasonable and Adequate

As part of the scrutiny it applies to an FLSA class or collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v*

*Fibreboard Corp.*, 527 U.S. 815, 855 (1999). In the present case, the Settlement Agreement provides for individual payments to participating Class members in the total amount of 100% of their respective unpaid wages for work performed and 100% liquidated damages from December 27, 2015 through March 23, 2019. There is no diminution in these payments for Representative Plaintiff awards, or attorney fees and expenses. The parties assert this settlement is fair, reasonable and adequate.

### C.  The Representative Plaintiffs' Fees are Proper and Reasonable

Service fees to representative plaintiffs recognizing the value of their services on behalf of other participants are proper. *See In re Dun & Bradstreet Credit Services Customer Litigation,* 130 F.R.D. 366, 373 (S.D. Ohio 1990). In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility,* 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

Here, the proposed Representative Plaintiff fees are proper and reasonable. Representative Plaintiffs Christopher Unger and Dustin Lach have provided extensive and effective assistance to Class Counsel throughout the course of this matter. They reviewed payroll records with counsel, facilitated interviews with other employees, and were instrumental in assisting Class Counsel in obtaining payroll records from the Genesee County Land Bank Authority, which were an important means of verifying proper settlement payment amounts and employee identification. The proposed Representative Plaintiff fees were well-earned, and do not reduce or discount the payments to the Class.

**D. Class Counsel's Fees and Expenses Are Proper and Reasonable**

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action." 29 U.S.C. §216(b). Class counsel seeks total costs and fees in this case of $65,000.00. Class counsel's actual fees and costs are significantly in excess of that amount. As shown in Ex. 4, Class Counsel's actual fees amount to $98,640.00, and costs amount to $516.05. However, the settlement provides that Defendants agree to the reasonableness of a request no greater than $65,000.00, and do not object to this request. Class Counsel limits its request to the amount provided in the Settlement Agreement. Class counsel's actual billing detail is attached as Ex. 4.

In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights." *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.*, 732 F.2d 495, 502 (6th Cir. 1984)).

*Fegley* was followed in *Bessey v. Packerland Plainwell, Inc.* 2007 WL 3173972 (W.D. Mich. 2007) (Ex. 8), in which the district court approved a one-third attorneys' fee in an FLSA settlement very much like the one presented here. Fulfilling *Fegley's* emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel" because "it rewards counsel for taking on a case which might not otherwise

be economically feasible." *Bessy*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved"). *Accord, In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993).

The *Bessey* court considered the comparative data concerning Rule 23 class settlements summarized in *Shaw v. Toshiba American Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study"). <u>This data indicates that regardless of size, attorneys' fees average approximately 32% of the settlement</u>.

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average fee to class counsel was approximately 33%, while the average result achieved for class members was only 7% to 11% of claimed damages. Measured against that standard, the settlement and related attorney fee and cost request in the present case are exemplary. The payments to participants represent approximately 100% of their recoverable wages under the FLSA, plus 100% liquidated damages. Further, the attorney fees are in addition to the amounts paid to the Class and do not result in any diminution of damages payable. The attorneys' fees requested are reasonable in light of the exceptional benefit achieved for Plaintiffs and the Class.

Class Counsel's requested fees and costs are based on a discount of actual hours spent on matters directly related to the litigation and investigation of class claims. The total fee as agreed in the Settlement Agreement amounts to approximately 12% of the principal settlement amount, well below the one-third contingency amount awarded in some cases and is not objected to by Defendants. The attorneys' fees requested by Class Counsel should not be further reduced because counsel efficiently resolved this case early on rather than prolonging the litigation and increasing their potential fees. As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121. The litigation expenses sought to be reimbursed are proper and reasonable. All such expenses were incurred in the course of this action for the purpose of preserving, proving, and presenting the claims of the Representative Plaintiffs and other, similarly situated employees.

## IV.     Conclusion

For the foregoing reasons, the parties respectfully request that this Court grant final approval to the Settlement Agreement (Ex. 1), and enter the proposed Final Order (Ex. 2) approving the settlement, and authorizing distribution of settlement payments.

Respectfully submitted,

/s/ Jeffrey S. Theuer
Jeffrey S. Theuer (P44161)
LOOMIS, EWERT, PARSLEY,
    DAVID & GOTTING, P.C.
Attorneys for Plaintiffs/Class
124 West Allegan Suite 700
Lansing, MI 48933
 (517) 482-2400

Dated: April 6, 2020

## CERTIFICATE OF COMPLIANCE

In accordance with LCivR 7.3(b)(i), the undersigned certifies that the word count on this Motion and Brief in Support is 4,548, as calculated by Microsoft Word for Office 365.

/s/Jeffrey S. Theuer
Jeffrey S. Theuer
Counsel for Plaintiffs/Class

**CERTIFICATE OF SERVICE**

I certify that on April 6, 2020, I electronically filed the foregoing Unopposed Motion for Final Approval of Settlement and Brief in Support with the Clerk of the Court using the ECF system which will send notification of such filing to all attorneys of record.

Dated: April 6, 2020

        /s/ *Jeffrey S. Theuer*
        Jeffrey S. Theuer (P44161)
        Loomis, Ewert, Parsley,
         Davis & Gotting, P.C.
        124 W. Allegan St., Suite 700
        Lansing, MI  48933
        (517) 482-2400
        jstheuer@loomislaw.com

        Attorneys for Plaintiffs/Class